Filed 9/15/22  In re J.F. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re J.F., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>J.A.F.,<br><br>        Defendant and Appellant. | D080286<br><br>(Super. Ct. No. EJ4557) |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia Silva, Acting County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Children's Legal Services of San Diego and Beth Ploesch for Minor.

J.A.F. (Father) appeals from the juvenile court's order terminating his parental rights over J.F. Father argues the San Diego County Health and Human Services Agency (Agency) failed to comply with its initial inquiry duties under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and Welfare and Institutions Code section 224.2[1] because it failed to interview extended family members about J.F.'s potential Indian ancestry. Father also argues the Agency failed in its duty to report its ICWA inquiry efforts to the juvenile court. The Agency concedes that the failure to make ICWA inquiries of the available extended family members was a violation of section 224.2, subdivision (b), but argues the error was harmless. J.F. filed a letter brief joining in the Agency's arguments and position. We conclude the Agency's failure to interview the available extended family members was harmless error, and we disagree that the Agency failed to report on its inquiry efforts. As such, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

The Agency initiated this dependency proceeding under section 300, subdivision (a) on behalf of J.F. in September 2020, alleging there was a substantial risk J.F. would suffer serious physical harm inflicted non-accidentally by Father and mother, B.F. (Mother).[3] The Agency alleged that in August 2020, Mother and Father engaged in a domestic violence

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] In light of the limited scope of this appeal, we provide an abbreviated summary of the dependency proceedings focused on the facts relevant to the issues on appeal.

[3] Mother is not a party to this appeal.

altercation, exposing J.F. to violent confrontations involving the use of physical force. The Agency further alleged that Mother and Father have a history of domestic violence with at least five prior instances of physical violence. Additionally, Mother's and Father's relationship continued to be volatile with three instances of domestic violence in September 2020, such that there is a substantial risk J.F. will suffer serious physical harm inflicted non-accidentally.

In its petition, the Agency indicated that it asked Mother and Father about J.F.'s Indian status and that the inquiry gave no reason to believe J.F. is an Indian child.

In its September 11, 2020 detention report, the Agency reported that Mother and Father were both interviewed on August 17, 2020, and they both denied having any Indian heritage. Although J.F. was put on a safety plan with maternal grandparents, the Agency did not report asking maternal grandparents about J.F.'s potential Indian ancestry.

At the detention hearing, Mother's counsel indicated Mother may have Indian ancestry on her mother's side, from the Hopi tribe. Father's counsel indicated Father denies any known Indian ancestry. The court ordered the Agency to use reasonable inquiry regarding ICWA. J.F. was detained with maternal grandparents.

In its October 1, 2020 jurisdiction and disposition report, the Agency stated that at the detention hearing, it was ordered to investigate J.F.'s Indian heritage. It reported that on September 22, 2020, Father again denied having Indian heritage. On September 24, 2020, a social worker asked Mother about Indian heritage and Mother stated that she was told her great grandmother had Indian heritage with the Hopi tribe. Mother denied having any additional information and stated her great grandmother passed

away in 2008. Mother responded "no" to the following questions: (a) "Have you ever lived on an Indian reservation?"; (b) "Do you have a tribal enrollment number?"; (c) "Do you have an identification card indicating membership or citizenship in an Indian tribe?"; and (d) "Do you have any reason to believe that the minor(s) in this case is/are an Indian child?" Mother also stated that she did not believe maternal grandmother had any additional information.

At the October 1, 2020 jurisdiction and disposition hearing, Mother's counsel confirmed with the court that Mother retracted her statement that she is a member of, or eligible for membership in, the Hopi tribe. Based on that representation, the court found that there is no reason to believe ICWA applies to J.F. Mother and one of the maternal grandparents appeared at the hearing by telephone.[4] The court sustained the petition, declared J.F. a dependent, and placed him with maternal grandparents.

In its March 29, 2021 status review report, the Agency reported that J.F. was thriving in his placement with maternal grandparents. Maternal grandparents and paternal grandparents worked together to coordinate schedules and supervise Mother's and Father's visits. The Agency also reported that Father relies heavily on paternal grandparents. Although Father was not making enough progress to have unsupervised visits, the Agency allowed him to have a third weekly visit, which would be supervised by paternal grandparents. In its addendum report, the Agency reported that Mother and Father were both complying with their case plans. At the six-month review hearing, the court granted overnight visits for Mother and

---

[4] It is unclear from the record which of the maternal grandparents appeared at the hearing.

4

unsupervised visits for Father.  The court ordered that J.F. be continued as a dependent and set a 12-month review hearing.

In its September 17, 2021 addendum report, the Agency reported that on August 23, 2021, Father went to Mother's home, was acting aggressively, and was pushing Mother.  Mother called the police and reported that she was fearful Father would return to her home and cause problems.  The Agency filed a section 388 motion regarding a change in circumstances and requested that Mother's and Father's visitation revert to supervised.  It reported that it intended to seek termination of services and to set a section 366.26 hearing. The court ordered that Mother's and Father's visitation be supervised pending further hearing.  Maternal grandparents attended the hearing by video.

At the next hearing, the court set the Agency's section 388 motion and contested 12-month review hearing for trial.  Maternal grandmother and paternal grandmother were both present at the hearing and the court ordered them to be available to testify at trial.

The contested section 388 hearing and 12-month review hearing went forward on November 5, 2021.  Maternal grandmother and paternal grandmother appeared remotely.  After hearing testimony, the court granted the relief requested in the Agency's section 388 motion, and reverted Mother's and Father's visitation to supervised.  The court terminated reunification services and set a date for the section 366.26 hearing.

Mother, Father, maternal grandmother, and paternal grandmother appeared for the section 366.26 hearing on April 12, 2022. The court terminated Mother's and Father's parental rights.[5]

DISCUSSION

Father argues the Agency did not satisfy its initial inquiry obligations under ICWA. He also argues the Agency failed to satisfy its obligation to report on its inquiry efforts.

A. Applicable Law

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*Isaiah W.*, *supra*, 1 Cal.5th at p. 7.) Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *Isaiah W.*, at p. 9.) An " 'Indian child' " is defined in the same manner as under federal law, i.e., as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is

---

[5] To the extent Father's notice of appeal expressly challenged only the April 12, 2022 order terminating his parental rights in which the juvenile court did not make any ICWA finding, we construe his appeal as challenging both the October 1, 2020 jurisdiction and disposition order in which the court expressly found ICWA did not apply, as well as the April 12, 2022 order terminating parental rights in which the court impliedly found ICWA continued to not apply, given the affirmative and continuing duties of the Agency and juvenile court to inquire regarding J.F.'s possible Indian ancestry. (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 15 (*Isaiah W.*) [because of court's affirmative and continuing duty, parent may challenge order terminating parental rights although parent did not appeal prior dispositional order in which court found ICWA did not apply; court's termination order "necessarily subsumed a present determination of ICWA's inapplicability"].)

6

the biological child of a member of an Indian tribe[.]" (25 U.S.C. § 1903(4); accord, Welf. & Inst. Code, § 224.1, subd. (a) [adopting the federal definition].)

As outlined by this court in *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*), "section 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.) However, where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*Ibid.*)

### B. ICWA Inquiry Duties

Father argues the Agency failed to satisfy its initial inquiry obligations under ICWA and section 224.2 because it did not ask extended family members about J.F.'s potential Indian ancestry. We agree that the Agency's failure to ask extended family members that were available to the Agency was a violation of section 224.2, subdivision (b), but conclude the error was harmless.

During the first stage of initial inquiry, "[s]ection 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county

7

welfare department, such as the Agency, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048–1049.) ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

Here, the Agency was in contact with maternal grandparents, with whom J.F. was placed, as well as paternal grandparents, who regularly supervised Father's visits. Maternal grandmother and paternal grandmother also attended several hearings. Although maternal grandparents and paternal grandparents qualified as extended family members subject to the Agency's initial inquiry obligations, the Agency does not claim that it asked these individuals about J.F.'s potential Indian ancestry and our review of the record does not reveal such inquiries. As such, the Agency failed to satisfy its initial inquiry obligation under section 224.2, subdivision (b), which the Agency concedes.[6]

Because the failures in this case concerned the Agency's state statutory duties to inquire regarding J.F.'s possible Indian ancestry, we may not

---

[6] Father also argues there was "another paternal relative and two further relatives" that were available to the Agency. However, Father's citation to the record shows that the Agency attempted to contact three other relatives by mail and received no response.

8

reverse unless error is prejudicial under state law. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) [miscarriage of justice may be found when court concludes it is reasonably probable result more favorable to appellant would have been reached in absence of error].)

There is currently a split of authority among the California Courts of Appeal regarding how to apply this prejudicial error standard to juvenile dependency cases in which agencies and/or juvenile courts have failed to satisfy their statutory inquiry duties regarding a child's possible Indian ancestry. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 777–782 (*Dezi C.*) [discussing the "continuum" of three rules for assessing whether a defective inquiry is harmless or prejudicial, and adopting fourth rule]. The California Supreme Court has yet to resolve this split of authority.

The Agency does not seek for this court to apply the "presumptive affirmance" standard established in *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430–1431 (*Rebecca R.*), which places the burden on the appealing parent to proffer new evidence on appeal showing that a different ICWA finding is likely to be achieved on remand. (*Id.* at p. 1431 ["The burden on an appealing parent to make an affirmative representation of Indian heritage is de minimis. In the absence of such a representation, there can be no prejudice and no miscarriage of justice requiring reversal"].)

On the other end of the spectrum, we decline to apply the "automatic reversal" standard set forth in *In re Y.W.* (2021) 70 Cal.App.5th 542, where "reversal is required no matter how 'slim' the odds are that further inquiry on remand might lead to a different ICWA finding by the juvenile court."

9

(*Dezi C.*, *supra*, 79 Cal.App.5th at p. 777; *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 556 ["A parent . . . does not need to assert he or she has Indian ancestry to show a child protective agency's failure to make an appropriate inquiry under ICWA and related law is prejudicial"].)  In our view, this standard is inconsistent with the California Constitution and California law regarding prejudice, which requires a showing of miscarriage of justice before a judgment or order may be reversed.  (Cal. Const., art. VI, § 13; *Watson*, *supra*, 46 Cal.2d at p. 836.)

The Agency contends the most reasonable approach is the "reason to believe" standard set forth in *Dezi C.*, where there is prejudicial error only if the juvenile court record or any new evidence proffered on appeal "suggest[s] a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding."  (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779.) Father argues this standard improperly places the burden on the appealing parent to make a record below or proffer evidence on appeal, where section 224.2 places the burden on the Agency and the juvenile court to make proper inquiries.

The Agency also submits the "readily obtainable information" standard set forth in *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*) is reasonable, where error is harmless unless "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child" and that "the probability of obtaining meaningful information is reasonable."  (*Id.* at p. 744.)  For purposes of this appeal, we need not decide, and do not weigh in on whether the standard set

10

forth in *Dezi C.* or *Benjamin M.* is the proper standard because the error here was harmless under either standard.[7]

Father argues there was prejudicial error under the *Dezi C.* standard because Mother did not unequivocally deny Indian ancestry where Mother's counsel stated at the detention hearing that Mother may have Indian ancestry on her mother's side. Father acknowledges Mother retracted this claim of potential Indian ancestry, but argues that "without more, there was reason to believe [J.F.] may be an Indian child." We disagree. After Mother claimed potential Indian ancestry, the Agency followed up with Mother in detail, including asking Mother whether she ever lived on an Indian reservation, whether Mother had a tribal enrollment number, whether Mother had an identification card indicating membership or citizenship in an Indian tribe, and whether she had any reason to believe J.F. is an Indian child. Mother unequivocally responded "no" to each of these questions. The Agency reported this inquiry to the juvenile court and Mother's counsel unequivocally confirmed with the juvenile court that Mother was retracting her statement that she is a member or eligible for membership of the Hopi tribe. Father argues maternal grandmother was available for questioning, who could have clarified J.F.'s potential Indian ancestry. Based on this record, however, there was no reason to believe that J.F. may be an Indian child such that the absence of further inquiry—i.e. asking maternal grandmother—was prejudicial. Thus, Father has failed to show prejudicial error under the *Dezi C.* standard.

---

7     Although the Agency does not seek to apply the *Rebecca R.* standard, we note that the error here is harmless under this standard as well because Father does not proffer new evidence on appeal showing that a different ICWA finding is likely to be achieved on remand. (See *Rebecca R., supra*, 143 Cal.App.4th at p. 1431.)

11

The failure to make an ICWA inquiry of maternal grandparents was also harmless error under the *Benjamin M.* standard. One of the maternal grandparents was present at the hearing when Mother's counsel indicated that Mother was retracting her claim of Hopi heritage. While it is not clear which maternal grandparent attended that hearing, they lived together and presumably would have discussed the issue if one of them had contradictory information, and presumably would have informed the Agency of the same. Thus, it is not likely that an inquiry of maternal grandparents would have revealed information likely to bear meaningfully on the issue of J.F.'s Indian status.

Father does not contend the failure to ask paternal grandparents was prejudicial under the *Dezi C.* standard, and we conclude it was harmless under the *Benjamin M.* standard. Father was in regular contact with paternal grandparents where they supervised Father's visits. Father also relied on paternal grandparents for support. He presumably could have asked them about any possible Indian ancestry at any time during this one-and-a-half-year dependency case and, more specifically, before filing his appeal complaining that the Agency failed to ask paternal grandparents about J.F.'s possible Indian ancestry. Given Father's unequivocal denial of Indian heritage and the close relationship he had with paternal grandparents, it is not likely that an inquiry of paternal grandparents would have revealed information likely to bear meaningfully on the issue of J.F.'s Indian status.

In sum, while the Agency's failure to ask maternal grandparents and paternal grandparents about J.F.'s potential Indian ancestry was a violation of section 224.2, subdivision (b), we conclude such error was harmless.

## C. ICWA Reporting Duties

Father argues the Agency failed to satisfy its duty to report its inquiry efforts to the juvenile court, citing California Rules of Court, rule 5.481(a)(5). We disagree.

California Rules of Court, rule 5.481(a)(5) provides:

> "The petitioner must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes."

Father argues the Agency "ignored their duty under the law to disclose in a timely fashion any and all further inquiries as to each parents' statements under the ICWA." Father cites section 224.2, subdivision (e), which addresses the duty of further inquiry when there is a "reason to believe" the child has Indian ancestry. However, Father denied having any Indian ancestry and could not have given rise to a reason to believe that J.F. is an Indian child. While Mother's counsel indicated at the detention hearing that Mother may have Hopi ancestry, Mother's subsequent responses to the Agency's detailed questions and Mother's counsel's confirmation that Mother was retracting her statement regarding Hopi ancestry, dispelled any reason to believe that J.F. is an Indian child arising from Mother's retracted statement. Indeed, the Agency did not receive any information giving rise to a reason to believe that J.F. is an Indian child. Thus, the duty of further inquiry was not triggered and the Agency was not compelled to report on any further inquiry. While it is unclear whether Father contends the Agency failed to report on its *initial* inquiry efforts, the Agency did inform the court of its initial inquiry efforts when the Agency asked Mother about potential

13

Indian ancestry on August 17, 2020 and September 24, 2020, and when it asked Father about potential Indian ancestry on August 17, 2020 and September 22, 2020

## DISPOSITION

The juvenile court's order terminating parental rights is affirmed.


McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


DATO, J.

14